UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| KRAIG B., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | CASE NO. 3:23-CV-5417-GJL <br><br> AMENDED ORDER ON PLAINTIFF'S COMPLAINT |

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule (MJR) 13. *See also* Consent to Proceed Before a United States Magistrate Judge, Dkt. 2. This matter has been fully briefed. *See* Dkts. 9, 16, 20.

After considering and reviewing the record, the Court concludes the Administrative Law Judge ("ALJ") did not err in finding Plaintiff not disabled. The Court accordingly **AFFIRMS** the Commissioner's final decision in this matter.[1]

---

[1] The Court's previous Order (Dkt. 21) similarly affirmed the Commissioner's decision but referenced legal standards and terminology inapplicable to applications filed after March 27, 2017. The Commissioner raised this issue in his Motion to Amend Judgment, which the Court granted. Dkts. 23, 27. The Commissioner proposed several amendments, which the Court finds consistent with the revised regulations and adopts in this Order.

AMENDED ORDER ON PLAINTIFF'S COMPLAINT - 1

## I.  PROCEDURAL HISTORY

Plaintiff's application for disability insurance benefits ("DIB") pursuant to 42 U.S.C. § 423 (Title II) of the Social Security Act was denied initially and following reconsideration. *See* Administrative Record ("AR") 89, 134. Plaintiff's requested hearing was held before the ALJ on January 11, 2022. AR 31-66.

On March 18, 2022, the ALJ issued a written decision in which the ALJ concluded that Plaintiff was not disabled pursuant to the Social Security Act. AR 12-30. On March 2, 2023, the Appeals Council denied Plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review. AR 1-6. On May 8, 2023, Plaintiff filed a Complaint in this Court seeking judicial review of the ALJ's written decision. Dkt. 1. Defendant filed the sealed AR regarding this matter on July 10, 2023. Dkt. 7.

## II.  BACKGROUND

Plaintiff was born in 1963 and was 55 years old on the alleged date of disability onset of February 18, 2018. AR 15. Plaintiff completed high school and a 2-year college degree. AR 705. According to the ALJ, Plaintiff suffers from, at a minimum, the severe impairments of degenerative disc disease of the lumbar spine; left knee abnormality; mild osteoarthritis of the bilateral hips; inguinal hernias; history of irritable bowel syndrome (IBS), and positive anti-nuclear antibody (ANA) test results with "working diagnosis" of rheumatoid arthritis. AR 18. However, the ALJ found Plaintiff was not disabled because Plaintiff had the following residual functional capacity:

> to perform light work as defined in 20 CFR 404.1567(b), with the following additional limitations: occasional climbing of ramps and stairs; never climbing ladders, ropes, or scaffolds; frequent balancing; occasional stooping, kneeling, crouching, and crawling; occasional bilateral overhead reaching; and frequent exposure to hazards, such as unprotected heights and dangerous machinery.

AR 20.

### III.    DISCUSSION

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

In Plaintiff's Opening Brief, Plaintiff raises the following issues: (1) whether the ALJ properly evaluated the medical opinions; and (2) whether the ALJ properly evaluated the testimony of Plaintiff. Dkt. 9 at 1.

**A.    Assessment of Medical Opinions**

Plaintiff assigns error to the ALJ's evaluation of examining psychologist Lezlie Pickett, Ph.D, examining physician's assistant Omar Gonzalez, PA-C, and two non-examining physicians, Merry Alto, M.D., and Craig Billinghurst, M.D. Dkt. 9 at 1-8.

Under the revised medical opinion regulations applicable to claims filed on or after March 27, 2017, an ALJ must articulate how persuasive he or she finds medical opinions and prior administrative medical findings. 20 C.F.R. § 404.1520c(b)(2). The Ninth Circuit has confirmed that the agency's revised regulations have abrogated the prior precedent, which applied presumptive weight to medical opinions from treating and examining sources and, in turn, required heightened levels of explanation to reject those opinions. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022), *reh'g denied*. "Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* Under the revised regulations, an ALJ simply articulates whether medical opinions and prior administrative medical findings by State agency consultants are persuasive and explains how he or she

"'considered the supportability and consistency factors' in reaching these findings." *Id.* at 792 (quoting 20 C.F.R. §§ 404.1520c(b) and 404.1520c(b)(2)).

### 1. The December 2020 Evaluation by Lezlie Pickett, Ph.D.

Dr. Leslie Pickett performed a psychological examination of Plaintiff on December 4, 2020. AR 739-47. She observed that Plaintiff's speech was normal, his expressed thoughts coherent, his working and remote memory intact, and that Plaintiff did not exhibit difficulty with normal conversation. AR 743-44. Plaintiff reported that he felt "like the whole process is bullshit," and that he did not feel like he had a mental illness, but rated his feelings of depression and anxiety as an 8 and 9 out of 10, respectively. AR 744.

Further, Plaintiff told Dr. Pickett that he was unable to work, but also that he was applying for disability benefits because he "lost [his] business because of COVID," he was not seeking mental health treatment and not taking medication prescribed for his physical conditions because he "doesn't really like taking pills anyway," and that he would resume his mobile food truck business if COVID issues were resolved. AR 740-41. Dr. Pickett observed that Plaintiff:

> "seemed to have some stiffness when rising to a standing position after having been seated for a length of time, but then could walk at a good clip. At the end of the evaluation, however, he was so distracted by telling me all the ways in which the application process for unemployment and DDDS was 'bullshit' that he rose easily from a seated position (which he had been in for approximately 1 ½ hours) and walked at a fast pace out to the waiting area […] when I reminded him that he had forgotten his walking stick back in my office. He was clearly able to ambulate quickly and easily without it."

AR 742.

Dr. Pickett found that Plaintiff's "self-report appears to lack adequate veracity due to response bias" but that the results from the mental status exam were "a valid and reliable representation of the Examinee's true abilities[.]" AR 746. She concluded that Plaintiff did "not currently have a major mental illness" and "currently appears able to obtain and maintain full

AMENDED ORDER ON PLAINTIFF'S COMPLAINT - 4

time employment, including the possibly increased mental demands of associated with competitive work." AR 746.

The ALJ found Dr. Pickett's opinion persuasive and consistent with normal observations by Plaintiff's treating sources. AR 19. However, Plaintiff argues that the ALJ should have disregarded Dr. Pickett's opinion because she "is under investigation for preparing a fraudulent consultative psychological evaluation for Social Security on April 9, 2021[,] in which she falsified evidence." Dkt. 9 at 5. To support this, Plaintiff submitted an exhibit with his Opening Brief containing an evaluation by Dr. Pickett and decision by an ALJ in a separate case dated April 9 and December 6, 2021, respectively. Dkt. 10.

In her opinion, Dr. Pickett wrote that the claimant (whose name was redacted by Plaintiff in his filing) alleged to have difficulty walking and moving, but "talked about currently playing the drums" and posting videos of himself doing so on social media. Dkt. 10 at 3. Dr. Pickett independently sought to confirm his self-report by viewing what she believed to be the claimant's social media posts. *Id*. Dr. Pickett then used this information to conclude the claimant's self-report had "only marginal veracity." Dkt. 10 at 6.

In his Reply, Plaintiff argues that Dr. Pickett "searched social media, and found a drummer who happened to have the same name" as the claimant, but instead of noting this evidence in the report or asking the claimant about this, she wrote that the claimant told her he played the drums and posted about it online, and she confirmed those reports by viewing his profile. Dkt. 20 at 3-4. However, the claimant testified at his hearing that he does not play the drums and has never posted videos of himself doing so, and Plaintiff points to other facts indicating that the claimant was not the same person as the drummer Dr. Pickett found online. *See Id.* at 4 (noting that the drummer's website states he graduated from Northwestern

AMENDED ORDER ON PLAINTIFF'S COMPLAINT - 5

1    University, but the claimant dropped out of school in 5th grade). The ALJ in that case found it
2    unnecessary to address Dr. Pickett's opinion, as he had already decided that the claimant's
3    physical impairments were disabling. Dkt. 10-1 at 6. But he continued, writing that Dr. Pickett
4    "appears to have made a mistake in identifying the claimant as an individual who reportedly
5    plays drums. The claimant testified that he does not even play drums. Therefore, the consultative
6    opinion would not be persuasive." *Id.* at 6.

7        Plaintiff presents facts which could call Dr. Pickett's own veracity into question. But
8    these facts concern a different claimant in a different case, at an appointment that took place four
9    months after Plaintiff's own. Dkt. 10 at 2; AR 739. Even if this Court accepts Plaintiff's
10   argument that Dr. Pickett "fabricated a background story" in a bad-faith attempt to discredit
11   statements about that claimant, Dkt. 20 at 5, these facts are insufficient to warrant reversal.
12   Plaintiff presents no evidence that Dr. Pickett was "under investigation" for this conduct, as he
13   claims, Dkt. 9 at 5, that she was fired or otherwise disciplined, or that her professional license
14   was suspended. Only if such facts were present here would it be possible that the ALJ's decision
15   was "based in part on fraud." Dkt. 20 at 6; *See Cunningham v. Colvin*, No. ED CV 13-1094-E,
16   2014 WL 296846, at *3 (C.D. Cal. Jan. 28, 2014) (ALJ erred in giving great weight to an opinion
17   by a doctor terminated by California's Department of Social Services for "performance and
18   ethical reasons" after he filed eleven reports containing identical or nearly identical mental status
19   exam findings) (citing *Brandl v. Astrue*, No. CV 11-7719-SP, 2012 WL 3887097, at *4 (C.D.
20   Cal. Sept. 7, 2012)).

21       If Plaintiff's allegations are true, then it would adversely impact the quality of the
22   doctor's opinion in the referenced case. The accuracy of these allegations also lack clarity
23   without the benefit of further investigative findings by a licensing authority or otherwise. Absent
24

AMENDED ORDER ON PLAINTIFF'S COMPLAINT - 6

additional information about that isolated episode much less any indication of a broader credibility concern, these allegations do not warrant per se reversal of any decision which relies on an opinion from that doctor.

Because the Court finds that the ALJ did not err and this evidence does not require reversal, it need not decide whether Plaintiff demonstrated "good cause" for his failure to file this evidence with the ALJ or Appeals Council. *Lofgran v. Berryhill*, No. 3:16-CV-01375-HZ, 2018 WL 903460, at *1 (D. Or. Feb. 14, 2018) (citing 42 U.S.C. § 405(g)). The Court affirms the ALJ's finding that Dr. Pickett's opinion was persuasive.

### 2. The October 2020 Opinion of Omar Gonzalez, PA-C

Mr. Gonzalez performed a consultative physical evaluation of Plaintiff on October 10, 2020. AR 703-714. He observed that Plaintiff presented as "uncomfortable and with chronically ill appearance," he was wearing a left knee hinge brace for a torn MCL with evidence of wear, used a walking stick to rise from a seated position, was observed to be in pain while walking, had a lower left extremity limp, was minimally able to squat, showed limited range of motion in several areas, demonstrated pain in his scapular, deltoid, cervical spine, both shoulders, right upper extremity, his left knee and lower left extremity, and showed good maximum effort. AR 705-08.

He diagnosed Plaintiff with cervicalgia with right shoulder pain and left arm paresthesia, axial lumbar spine pain, and left knee arthropathy/MCL tear. AR 709-10. He also found that Plaintiff's prognosis was poor, meaning that he could "expect minimal (~25%) improvement in the next 12 months assuming optimal treatment." AR 710. According to Mr. Gonzalez, Plaintiff was limited to one hour of standing in an 8-hour work-day, with 10-15 minutes of standing at a

1  time, 1-2 hours of walking, 4 hours of sitting, occasional lifting/carrying of 10-15 pounds, and
2  frequent lifting/carrying of 10 pounds. AR 711.
3       The ALJ found this opinion not persuasive, noting that the one-time examination took
4  place "two months after the claimant injured his left knee," an injury "expected to 'heal on its
5  own with protective immobilization using a long hinge knee brace.'" AR 24. The ALJ found the
6  opinion inconsistent with the medical record, adding that Plaintiff "was observed with a normal
7  gait and station" at an appointment two weeks later, and that his appointment with Dr. Pickett
8  two months later further undermined his subjective allegations of pain. AR 24 (citing AR 706,
9  738-48). The ALJ concluded that the relatively benign findings and observed mobility of
10 Plaintiff in these appointments, along with the temporary nature of Plaintiff's knee injury,
11 undermined Mr. Gonzalez's opined limitations. AR 24. These were germane reasons to find Mr.
12 Gonzalez's opinion not persuasive. The ALJ reasonably addressed the supportability and
13 consistency factors and found Mr. Gonzalez's opinion not persuasive.

14       **3.   The October 2020 and May 2021 Prior Administrative Medical Findings of**
15            **Merry Alto, M.D., and Craig Billinghurst, M.D.**

16       Non-examining physicians Dr. Alto and Dr. Billinghurst reviewed Plaintiff's medical
17 record, and concluded that Plaintiff could: perform light work, frequently balance, occasionally
18 stoop, kneel, crouch, and crawl, and occasionally reach overhead bilaterally. AR 79-83, 102-06.
19 Each of them also found that Mr. Gonzalez's opinion conflicted with the medical record, for
20 similar reasons cited by the ALJ. AR 83-84, 102. The ALJ found both of their assessments
21 persuasive. AR 23-24. Plaintiff's only argument is that Dr. Alto and Dr. Billinghurst "relied in
22 part on the tainted evidence from Dr. Pickett," and their prior administrative medical findings are
23 therefore not persuasive. Dkt. 9 at 7. This argument fails because, as discussed above, Plaintiff
24

has not shown that Dr. Pickett's opinion and observations were "tainted" by alleged misconduct in a different case.

**B.     Plaintiff Testimony**

Plaintiff argues the ALJ erred by not giving clear and convincing reasons for discounting his testimony. Dkt. 9 at 8-15 (citing *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014)).

Plaintiff testified that he previously worked various construction jobs, including driving an escort vehicle for wide-load shipments, applying residential flooring and tiling, and pouring and assembling cement bunkers. AR 38-40. He testified that he stopped working in construction in 2016 but opened a food truck business, where he performed the "mental work" of the operation for 30-50 hours each week during summer months, but that he was forced to close this business in 2020 due to COVID-19. AR 41-42. Plaintiff testified that he suffers from rheumatoid arthritis that causes him to feel "like [he] got run over by a truck" after performing physical labor and saps his energy. AR 44-46. He stated that he has limited mobility and can't perform daily chores at home, that he can walk on his own but would prefer to have a walking stick. AR 47. Plaintiff explained that he does not spend much time walking, spends most of his time lounging and napping, and generally does not engage in any recreational activities. AR 47-49. He also testified to IBS symptoms interfering with his life and travel, elbow pain from a radius fracture, and left knee pain from an MCL tear that occurred in the summer of 2020. AR 50.

The ALJ found that Plaintiff's testimony concerning the intensity, persistence and limiting effects of his symptoms was not entirely consistent with the medical evidence and other evidence in the record. AR 48-49. The ALJ found "inconsistencies and other facts present in the evidence that undermine the persuasiveness of the claimant's subjective symptom reports and complaints." AR 21. Specifically, the ALJ found that Plaintiff's comfort and ease of movement

at an October 2020 physical exam and his December 2020 appointment with Dr. Pickett was "evidence of malingering behaviors." *Id.* (citing AR 766, 738-48).

According to the ALJ, further contradictory evidence included (1) records showing Plaintiff generally presented with a normal gait; (2) Plaintiff's normal test results for balance and memory, contrasting his testimony that both were poor; (3) Dr. Pickett's note that Plaintiff "initially claimed that he had no ability to answer any of the questions" and would need a mental health advocate to assist, but "his statements and behavior markedly improved when [Dr. Pickett] discussed 'payee status' - the need for a protective payee for people who are not capable of managing the benefits paid to them"; (4) Plaintiff's statements to medical providers that he injured his MCL from "an inner-tubing accident being pulled behind a boat at approximately 30 miles an hour" and, in later appointments, from a waterskiing accident, contrasting his testimony that he injured it by jumping off of a boat; and (5) that Plaintiff was operating a food truck business which was "thriving" but "ended due to the pandemic, not any of his impairments." AR 21-22 (citing AR 685, 695, 697-99, 706, 743).

These were clear and convincing reasons supporting the ALJ's decision to discredit Plaintiff's testimony. In his Reply, Plaintiff argues that contradicting observations of his gait and movement "merely show[] some variability" in his symptoms, and the differing descriptions of Plaintiff's knee injury do not prove he "did not accurately describe his injury." Dkt. 20 at 8. This argument is merely an "alternative interpretation of the evidence" and fails to show that the "ALJ's interpretation was unreasonable or unsupported by substantial evidence." *Evans v. Colvin*, No. 15-CV-5383-MJP, 2016 WL 463365, at *3 (W.D. Wash. Feb. 8, 2016) (internal citations omitted); *see Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's

decision, the ALJ's conclusion must be upheld). And while Plaintiff again argues that some of the cited evidence comes from Dr. Pickett who is "a dishonest source," the Court reiterates that the ALJ did not err by relying on her report. This Court affirms the ALJ's rejection of Plaintiff's testimony.

## IV. CONCLUSION

Based on these reasons and the relevant record, the Court **ORDERS** that this matter be **AFFIRMED** to pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk is directed to enter judgment for Defendant and close the case.

Dated this 4th day of March, 2024.

Grady J. Leupold
United States Magistrate Judge